## R. B. Tyler Co. v. Hampton Cracker Co.

(Decided May 19, 1936).

LAWRENCE S. LEOPOLD and JOS. J. KAPLAN for appellant.

EDWARD P. HUMPHREY and MARVIN H. TAYLOR for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Reversing.

The appellee, plaintiff below, brought this suit in the Jefferson circuit court against appellant, defendant below, to recover of it damages for breach of implied warranty on a contract of purchase and sale of brick. For convenience we will refer to the parties as plaintiff and defendant according to their respective status in the circuit court.

Plaintiff alleged in its petition that in the fall of 1933 it purchased from the defendant, and defendant sold to it, 127,000 No. 1 hard-burned common brick for building purposes for the contract price of $11.50 per

thousand, or a total of $1,460.50, which sum plaintiff agreed to and did pay therefor; that the brick were delivered upon the premises of plaintiff and used by it in constructing an addition to its plant and factory used for the manufacture of crackers, doughnuts, and perhaps other like food products.

Plaintiff further alleged in substance that it discovered no patent defects nor none were discoverable in the brick, and it did not know, nor could have known by the exercise of ordinary care, that the brick were defective or otherwise not in conformity to the contract or unfit for the purpose for which they were intended to be used, but thereafter the brick chipped, burst, cracked, and distintegrated, and proved to be unfit and unsuitable for the purposes for which they were intended, building purposes, and did not meet the ordinary requirements or specifications of No. 1 hardburned common brick to be used for building purposes; that, when the brick were sold by defendant to plaintiff, there was an implied warranty by the defendant that the brick were good and sound No. 1 hard-burned common brick suitable for building purposes, but none of said brick was of the character, kind, and quality impliedly represented or warranted to be, and were unfit for the purpose for which they were intended to be used; that defendant knew, or could have known by the exercise of ordinary care, that the brick were defective and unfit for the purposes intended, and, by reason of their defective and unfit condition, they were of the value of $547.50 only instead of the contract price, and that, because of the defective and unsound condition of the brick, it had to remove same from its building and replace them with other material fit for the purpose, at a cost of $913, and prayed that it recover of defendant that sum. Later by amended petition it asked to recover the sum of $952.50.

Defendant filed its answer, traversing the allegations of the petition, and further pleaded in paragraph No. 2, among other things, that the brick claimed to have been purchased from it by defendant were in fact sold by it to the Wortham Construction Company through the latter's agent, Charles Yantz, a subcontractor, who applied for and ordered No. 1 hard-burned Coral Ridge common brick, and it procured the brick from the Coral Ridge Clay Products Company, and de-

livered to plaintiff the full quantity of No. 1 hard-burned Coral Ridge common brick which were of the regular type, class, and specifications of No. 1 hard-burned Coral Ridge common brick as manufactured and sold by the Coral Ridge Clay Products Company, and were so received and accepted by the subcontractor and by plaintiff as such, and were in full compliance with the agreement; that said brick was ordered for general building purposes, but plaintiff used same for special purposes, to wit, as a face brick on the inside of a room used by plaintiff as a dough-mixing and baking room.

The issues were made by subsequent pleadings, and a trial before a jury resulted in a verdict in favor of plaintiff in the sum of $952.50, and to reverse that judgment this appeal is prosecuted.

In the motion and grounds for a new trial and in brief for appellant many alleged errors are complained of, but, for a determination of this case, it does not become necessary to consider all of them. The determinative issue is whether the brick sold and delivered by defendant to plaintiff were the class, character, or kind of brick ordered by defendant's agent.

It is earnestly insisted for defendant that the evidence of Mr. Hampton, president of plaintiff company, and other evidence, conclusively show that plaintiff's contractor or agent ordered Coral Ridge hard-burned common brick, and that the brick delivered to plaintiff by defendant was what was known in that community and among builders and contractors as No. 1 Coral Ridge hard-burned common brick, and, having specified the character and kind of goods or property by a trade-name, and having received what is known as No. 1 Coral Ridge hard-burned common brick, there was no implied warranty as to its fitness for any particular purpose, and for that reason the court erred in failing to sustain its motion for a directed verdict.

It is not claimed that Mr. Hampton had any dealings directly with the defendant, but, according to his evidence, he ordered the brick through his contractors and agents. On direct examination Mr. Hampton's counsel asked him about the kind of brick he ordered, and he said he ordered No. 1 hard-burned common brick. He was further asked and answered as follows:

"Q. You just ordered No. 1 hard-burned common brick, not any particular kind, did you? A. I ordered Coral Ridge brick.

"Q. For this job? A. Yes, sir. I had a good reason for it, I thought. I don't know whether I told you about it or not.

"Q. Had they furnished you any good brick before? A. They certainly had."

Mr. Hampton first stated that he ordered No. 1 hard common brick, but later, when asked the direct question as to whether he just ordered No. 1 hard common brick, he qualified his former answer by saying that he ordered Coral Ridge brick for that job and assigned his reason therefor; namely, that they had furnished him good brick before. But he did not state that Coral Ridge brick previously used by him was the common class or higher class of brick.

Huston Fairleigh, testifying for defendant, stated that he had had more than 20 years' experience in building material trade, and had been the manager of the Tyler building material department for about 15 years. He said he took the order from Charles Yantz, who was the agent of the subcontractor, through whom plaintiff purchased the brick, and that his recollection was that Yantz ordered Coral Ridge brick and that Coral Ridge common brick was delivered to plaintiff. This evidence is not denied.

Section 2651b-15, subsec. (1), Kentucky Statutes, reads:

"Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment [whether he be the grower or manufacturer or not], there is an implied warranty that the goods shall be reasonably fit for such purpose."

The above-quoted portion of the Statutes is not here applicable because it is conclusively shown that the buyer did not rely on the seller's skill or judgment, but, to the contrary, it relied upon its own judgment, because, as stated by him, he had reasons therefor. He specifically designated Coral Ridge common brick. It

is our view that subsection (4) of the Statutes, supra, is conclusive of this case. It reads:

> "In the case of a contract to sell or a sale of a specified article under its patent or other trade name, there is no implied warranty as to its fitness for any particular purpose."

In 90 A. L. R. 417, quoting with approval from the case of Iron Fireman Coal Stoker Co. v. Brown, 182 Minn. 399, 234 N. W. 685, the court says:

> "The spirit and intent of subd. 4 of the statute is that the seller is not held to an implied warranty because the buyer gets the distinct thing selected by him, an exact article, for which he bargains. So, acting upon his own desires, he takes his own chances as to the fitness of the article, and should not be permitted to complain of the seller who has supplied him with the very thing he sought. B. F. Sturtevant Co. v. Le Mars Gas Co. [1920] 188 Iowa, 584, 176 N. W. 338. In such cases it is not important that the buyer discloses to the seller his intentions as to the use of the article. It is usually helpful to determine upon whose judgment and responsibility the purchase was made. Or, to state it another way, if the thing is itself specifically selected and ordered, the buyer takes upon himself the risk of its effecting the desired purpose. Under such circumstances, the law does not impose an implied warranty; nor should it."

Also to the same effect see Erie City Iron Works v. Miller Supply Co., 68 W. Va. 519, 70 S. E. 125, referred to and quoted from in 59 A. L. R. 1200.

Many other authorities could be cited in support of our conclusion, but we think the evidence measured to the authorities herein cited is conclusive of this case, and it would serve no useful purpose to give time and space to further discussion of the question.

For reasons indicated, it is our conclusion that appellant, plaintiff below, was entitled to a directed verdict in its favor, and the court erred in not so holding.

The judgment is reversed and remanded for proceedings consistent herewith.