## HALTERMAN v. LOUISVILLE BRIDGE & IRON CO.

Court of Appeals of Kentucky.
Jan. 23, 1953.

Duncan, Humphrey, Peabody & Oldham, Louisville, for appellant.

Grover G. Sales, Louisville, for appellee.

MILLIKEN, Justice.

The sole question in this case is whether there can be an implied warranty of fitness for a particular purpose of a specified article sold under its patent or other trade name. Two apparently conflicting subsections of KRS 361.150, our Kentucky enactment of Section 15 of the Uniform Sales Act, are involved:

"(1) Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be reasonably fit for such purpose. * * *

"(4) In the case of a contract to sell or a sale of a specified article under its patent or other trade name, there is no implied warranty as to its fitness for any particular purpose."

■ The trial court empaneled a jury to try this case, but discharged it after some evidence had been heard and then sustained a general demurrer to the petition and amendments thereto.

In his pleadings Mr. Halterman alleged that he informed representatives of the Louisville Bridge & Iron Company that he wished to construct a building in Louisville suitable for use as a commercial repair and maintenance garage in which automobiles would be repaired, serviced and painted and in which repair parts, machinery and equipment would be stored and kept; that defendant knew and understood his purpose and requirements, and "represented" to him "that a prefabricated Quonset type building which was for sale and construction by defendant would be suitable and fit for such particular purposes and uses", and that he "did rely upon the skill and judgment of defendant in respect of whether the building was suitable and fit for said purposes and uses," and was thus induced and influenced by the aforesaid representations of defendant to purchase said building. The plaintiff's pleadings went on to recite that the defendant made an "implied warranty * * * that the said Quonset type building would be reasonably fit" for the use the plaintiff intended to make of it; that he bought the Quonset type building from defendant, paid for it, and erected it at the site he had stated; that it leaked so badly and irreparably that it resulted in damage to painting and repair jobs the plaintiff had under taking en as well as to some of his tools and equipment, and that there was a vast difference in value between the building as it is and as it was warranted to be. The plaintiff claimed total damages amounting to $4,480. The purchase price of the building is not mentioned in the plaintiff's pleadings nor is it specifically averred that the phrase "Quonset type building" refers to a patented or trade named article, but the defendant's answer avers that it is and a deposition which was filed in support of the defendant's pleading reveals that the word "Quonset" is registered in the U. S. Patent Office by the Great Lakes Steel Corporation which fabricated the parts for the building sold to and constructed for the plaintiff by the defendant. Regardless of any technical pleading question which may be present, we take judicial notice of the fact that the word "Quonset" has a specific connotation sufficient to involve the applicability of the aforequoted provision of the Uniform Sales Act, KRS 361.150(4), to the facts of this case.

■ It is our opinion that the existence of an implied warranty of suitability for a particular purpose when the goods are sold under a patent or trade name depends upon the facts of the particular case. We believe that there is no such implied warranty in the case of a contract to sell or a sale of a specified article under its patent or trade name when the buyer exercises his own judgment in the selection of the goods and does not rely on the judgment of the seller regarding its suitability for his purpose. In such a situation, the seller is under no further obligation if he supplies goods conforming to the description in the contract and which are of merchantable quality. A buyer is considered his own best judge when he exercises his own judgment in the selection of goods, and the law in such instances does not impose any obligation upon the seller to exercise his judgment for that of the buyer as to the suitability of the goods purchased. As said in R. B. Tyler Co. v. Hampton Cracker Co., 265 Ky. 236, 96 S.W.2d 593, 594, quoting with approval from the case of Iron Fireman Coal Stoker Co. v. Brown, 182 Minn. 399, 234 N.W. 685:

"The spirit and intent of subd. 4 of the statute is that the seller is not held to an implied warranty because the buyer gets the distinct thing *selected by him*, an exact article, for which he bargains. So, acting upon his own desires, he takes his own chances as to the fitness of the article, and should not be permitted to complain of the seller who has supplied him with the very thing he sought." (Emphasis ours.)

In testing the sufficiency of the plaintiff's petition, we must assume that the allegations contained therein are true. Cases may be found in other jurisdictions holding that under circumstances similar to those recited in the plaintiff's petition there can be no warranty of suitability because of subsection (4). A broader perspective is employed, however, in those cases holding that subsection (4) is not applicable when the buyer makes known to the seller the purpose for which the goods are desired and when the seller thereupon recommends goods identified by a patent or trade name, which the buyer then orders on such recommendation, relying upon the judgment and skill of the seller. In such a situation the trade or patent name is used merely as a convenient way of designating or identifying the goods which the buyer purchases in reliance on the seller's judgment regarding their suitability for his particular purpose. Such a sale is not one under subsection (4) but one under subsection (1). Williston on Sales, Third Edition, Vol. 1, Section 236(a), page 614; Vold on Sales, Section 148, page 462; 77 C.J.S., Sales, § 325, page 1181; 46 Am.Jur., Sales, Section 353, page 539; Annotations, 59 A. L.R. 1180, 90 A.L.R. 410.

The defendant relies upon the case of R. B. Tyler Co. v. Hampton Cracker Co., 265 Ky. 236, 96 S.W.2d 593, under the authority of which the defendant's demurrer was sustained by the trial court. We do not believe that the holding in that case is in conflict with our holding herein, although we held in that case that no warranty existed. That case involved a sale of "No. 1 Coral Ridge hard-burned common brick." In that case this court, in determining that there was no implied warranty of suitability for the company's purpose, said:

"* * * it is conclusively shown that the buyer did not rely on the seller's skill or judgment, but, to the contrary, it *relied upon its own judgment*, because, as stated by him (president of the company), he had reasons therefor." (Emphasis and parenthesis ours.)

It is obvious that the facts in that case brought it within the purview of subsection (4).

Under present day conditions where so many of the articles in commerce either are patented or are marketed under trade names, we would, in effect, emasculate subsection (1) of KRS 361.150 if we were to conclude that subsection (4) thereof precludes an implied warranty of fitness in all circumstances involving the sale of patented or trade named articles.

The judgment of the trial court is reversed for proceedings consistent herewith.