**Betty L. HOSKINS' ADMINISTRATOR
(Arthur Ward), Appellant,**

v.

**KENTUCKY RIDGE COAL COMPANY
et al., Appellees.**

Court of Appeals of Kentucky.

March 25, 1955.

Claude P. Stephens, Prestonsburg, Jesse K. Lewis, Lexington, for appellant.

Lay & Knuckles, E. B. Wilson, Pineville, for appellee.

MILLIKEN, Justice.

The main issue on this appeal is whether it was proper for the trial court to grant the appellees, defendants below, a summary judgment on the basis of the evidence introduced in support of their motion therefor. Since we have decided that the summary judgment must be set aside, we will not state the facts and collateral legal issues in detail.

The appellant, as plaintiff below, sued the appellees for $105,000 for mining coal in a disputed 10-acre tract before the death of its owner, Betty L. Hoskins, in 1939. In 1948 or 1949, the estate of Mrs. Hoskins was adjudged the owner of the tract by adverse possession by the United States District Court for the Eastern District of Kentucky. The appellees had mined the coal under the tract as an incident of their mining operations on their adjoining land on the assumption, apparently, that the 10-acre tract belonged to them. There was no

surface indication that the coal was being extracted from the tract, and the issue resolves itself, for the purpose of this appeal, as to whether the appellants are charged with actual notice of the trespass by any other means.

The appellees were required by statute to file annually with the State Department of Mines an accurate map of their workings and to keep another copy of the map at their own office. The statute, KRS 352.-450, declares:

"(1) The operator or superintendent of each coal mine shall annually not later than January 6, make or cause to be made an accurate map of the workings of the mine, on a scale of one hundred, two hundred, three hundred or four hundred feet to the inch, showing the area mined and the forms of the excavations up to January 1, together with the location and connection of the lines of all adjoining lands within one thousand feet of the excavations, and the name of each owner so far as known, marked on each tract. The operator or superintendent shall deposit a true copy of the map with the chief within forty-five days after January 1, and another copy of the map shall be kept at the office of the mine."

In support of their motion for a summary judgment on the theory that the appellant had received actual notice of the underground trespass and the statute of limitations had consequently run, the appellees introduced an extract from the testimony of their engineer, A. A. Fish, in the aforementioned proceedings in the United States District Court, in which he stated that copies of the maps filed with the state were presented each year, beginning in 1936, to the appellant and the estate's mining engineer, Glen Justice. No copy of such a map was filed, apparently because no copy was available, and the affiant, A. A. Fish, had died.

When we construe the extract from the testimony of Mr. Fish in relation to the statutory requirements as to the maps, we must not overlook the fact that the appellees were at that time claiming title to the 10-acre tract. As a consequence, we are really left in the dark as to whether the maps were so drawn that they would clearly notify the appellant or the estate's engineer that coal has been extracted from the 10-acre tract. In other words, we would have to see a map before we could possibly be sure of that fact and even then the map might not reveal it because title to the 10-acre tract was then in dispute. Furthermore, it was the statutory duty of the appellees to keep copies of such maps available at the office of the mine.

The real issue in this case, therefore, is whether the testimony of Mr. Fish to the effect that the maps showed the mine entries and the Betty Hoskins boundary line, when balanced against the appellant's failure to present any counter-affidavits as to what the maps disclosed, forecloses an issue of fact as to whether the maps were such actual notice of the trespass as to justify the granting of a summary judgment to the appellees. As heretofore indicated, it is our conclusion that the extract from the testimony of Mr. Fish is not a sufficient basis for the entry of a summary judgment for the appellees.

A summary judgment must be cautiously granted. "The courts hold the movant to a strict standard. To satisfy his burden the movant must make a showing that is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact. Since it is not the function of the trial court to adjudicate genuine factual issues at the hearing on the motion for summary judgment, in ruling on the motion all inferences of fact from the proofs proffered at the hearing must be drawn against the movant and in favor of the party opposing the motion," Moore's Federal Practice, Vol. 6, pages 2124, 2125, and again at page 2128: "On motion for summary judgment by a defendant on the ground that plaintiff has no valid claim, the

defendant, as the moving party, has the burden of producing evidence of the necessary certitude, which negatives the opposing party's (plaintiff's) claim. This is true because the burden to show that there is no genuine issue of material fact rests on the party moving for summary judgment, whether he or his opponent would at trial have the burden of proof on the issue concerned * * *."

The judgment is reversed and the case remanded for further proceedings.