Joseph D. HALTERMAN, Appellant,

v.

LOUISVILLE BRIDGE & IRON COMPANY, Appellee.

Court of Appeals of Kentucky.

May 27, 1955.

Alex P. Humphrey, Louisville, for appellant.

Grover G. Sales, Louisville, for appellee.

CULLEN, Commissioner.

In the action of Joseph Halterman against the Louisville Bridge & Iron Company, seeking to recover damages for breach of warranty in the sale of a prefabricated metal building, the court entered summary judgment for the defendant. Halterman has appealed.

This is the second appeal in this case. Originally, the action was permitted to go to trial, but at the close of the plaintiff's proof the court sustained a demurrer to the complaint and dismissed the action. On appeal, we reversed the judgment, holding that the complaint stated a cause of action. Halterman v. Louisville Bridge & Iron Co., Ky., 254 S.W.2d 493. The complaint had alleged that the building was sold under the patent or trade name, "Quonset," and the question on the first appeal was whether, in view of KRS 361.150(4), there could be a recovery for breach of an implied warranty of fitness for a particular purpose. We held that the mere fact that goods are identified in a sale by a patent or trade name will not of itself preclude an implied warranty of fitness for a particular purpose. We said, 254 S.W.2d 495:

"* * * subsection (4) is not applicable when the buyer makes known to the seller the purpose for which the goods are desired and when the seller thereupon recommends goods identified by a patent or trade name, which the buyer then orders on such recommendation, relying upon the judgment and skill of the seller. In such a situation the trade or patent name is used merely as a convenient way of designating or identifying the goods which the buyer purchases in reliance on the seller's judgment regarding their suitability for his particular purpose. * * *"

Following the return of the case to the lower court, the defendant moved for a summary judgment, on the basis that the evidence for the plaintiff, as given upon the original trial and as contained in pre-trial depositions, did not show that the plaintiff relied upon the skill and judgment of the seller, and therefore the issue of fact on that point, as made in the pleadings, did not exist. The court made the following findings of fact:

"1. The plaintiff applied to defendant for a prefabricated Quonset-type building, which was for sale and construction by the defendant.

"2. The plaintiff desired this type of building, and made inquiry only whether or not that type of building would be suitable for a garage.

"3. Defendant said it was suitable for use as a garage.

"4. The word 'Quonset' is a registered patent or trade name, and this Quonset building was sold under its patent or trade name by the defendant to the plaintiff.

"5. The buyer did not rely upon the judgment and skill of the seller in ordering this Quonset type of building for a garage.

"6. The building furnished was reasonably fit and suitable for a garage, shown by the use of same at a profit for 2½ years thereafter, and no contrary affidavit being filed that the use has been discontinued since the date of the first trial or that the profit operation has ceased since that time."

Upon the foregoing findings of fact, the court concluded, first, that there was no implied warranty of fitness for a particular purpose, and second, that even if there was such a warranty there was no breach, be-

cause the plaintiff had been able to carry on a profitable business in the building. Accordingly the court entered summary judgment for the defendant.

The evidence that was considered by the court on the motion for summary judgment shows that the plaintiff had been carrying on the business of repairing and servicing automobiles in a small garage in back of his home. He desired to enlarge his operation, and purchased a vacant lot with the view of erecting a garage building. He saw an advertisement of the defendant for Quonset type buildings, and called at the defendant's place of business. The defendant was a local dealer for the manufacturer of Quonset buildings, and sold no other type of buildings. Over a period of two months the plaintiff talked from time to time with a salesman for the defendant. The salesman looked at the plaintiff's lot; showed him a Quonset building that had been erected for display purposes; made comparisons between the Quonset building and an aluminum building of another manufacturer; and gave the plaintiff literature describing the advantages of the Quonset building. The plaintiff at the outset made known to the salesman that he wanted a garage building, and the salesman told him that the Quonset building was suitable for use as a garage, and that such buildings were in use in a number of places as garages. The plaintiff then purchased a Quonset building from the defendant, and it was constructed on his lot. Concerning his decision to purchase the plaintiff testified:

"* * * I suppose I talked to him (the salesman) maybe a dozen times in the next couple of months. Then I definitely got ready for that building and I had decided that was the type of building I thought would be the cheapest and the most usable at that time. * * *"

The alleged breach of warranty was based upon the claim that the building was not water tight. The testimony of the plaintiff was that whenever it rained the water seeped through the roof and collected on the floor. He gave evidence as to how this in-terfered with his garage operations, but he admitted that he had been able to make a profit in his business during the time he had been using the building.

In his testimony, the plaintiff did not say in so many words that he relied upon the skill and judgment of the seller in buying the building, and this fact seemed to impress the lower court as controlling. We do not consider it controlling. We think the conclusion fairly could be reached from the evidence that the plaintiff made his decision to purchase the building only after having been convinced by the defendant's salesman that the building would be suitable for a garage. His testimony was that he talked with the salesman maybe a dozen times in two months, and *then* decided that the building was the best for his purpose.

The situation here is not the same as in R. B. Tyler Co. v. Hampton Cracker Co., 265 Ky. 236, 96 S.W.2d 593, where the buyer simply placed an order with the seller for 127,000 No. 1 "Coral Ridge" hard-burned common brick. There the buyer made his choice of a trade-name product without any discussion or negotiation with the seller. Here, it would be a fair conclusion that when Halterman first called upon the defendant he was interested only in exploring the possibilities of a Quonset type building; that he did not come to the defendant's place of business for the purpose of placing an order, but to obtain information as to whether the Quonset building would be suitable for his purposes; and that he did not decide to purchase the building until the salesman had satisfied him that the building would meet his needs.

It is our opinion that the evidence was sufficient to show that there was a genuine issue of fact on the question of reliance upon the skill and judgment of the seller. In reaching this conclusion we do not think it necessary for us to hold that the evidence was sufficient to require submission of the case to a jury. We think it is enough to say that the evidence was not so inadequate as to have entitled the defendant, beyond all question, to a directed verdict. It has been held under the Federal Rules of Civil Pro-

cedure, 28 U.S.C.A., that a summary judgment is warranted where the evidence is such as to "require" or "compel" a directed verdict for the moving party. Sartor v. Arkansas Natural Gas Corp., 321 U.S. 620, 64 S.Ct. 724, 88 L.Ed. 967; Dulansky v. Iowa-Illinois Gas & Electric Co., D.C., 10 F.R.D. 566; Magee v. Coca-Cola Co., D.C., 17 F.R.D. 10; Doehler Metal Furniture Co. v. United States, 2 Cir., 149 F.2d 130; Fremon v. W. A. Sheaffer Pen Co., D.C., 111 F.Supp. 39. However, in these cases it is clear that the courts, in using the words "require" and "compel," were speaking in terms of absence of any room for doubt.

It has been said that the test in determining whether to grant a summary judgment for the defendant is not whether the plaintiff is *unlikely* to prevail upon a trial, but whether the issues are so unsubstantial that it obviously would be futile to try them. Sprague v. Vogt, 8 Cir., 150 F.2d 795; Ford v. Luria Steel & Trading Corp., 8 Cir., 192 F.2d 880. Also, it has been pointed out that the hearing on a motion for a summary judgment is not a trial, and if there is any reasonable doubt as to whether there is a genuine issue concerning a material fact a summary judgment should not be granted. Barron & Holtzoff, Federal Practice and Procedure, secs. 1231, 1234, 1235.

█ As we view it, consideration of whether the movant could be entitled to a directed verdict is merely one of several possible approaches to the main question on a motion for a summary judgment, which is: Is there a genuine issue as to a material fact? Regardless of which approach is used, it seems that the rule should be that if there is any reasonable doubt on the question, a summary judgment should not be granted.

█ We find no merit in the proposition that because Halterman made a profit in his garage business, the building necessarily must have been suitable for garage purposes, and therefore there was no breach of warranty. It is conceivable that Halterman could have operated profitably in a tent,

or under a makeshift shelter. "Reasonably fit," as used in KRS 361.150(1), means something more than barely usable.

█ Although our decision, that there is a genuine issue of fact concerning the breach of an implied warranty of fitness for a particular purpose, may dispose of the major issue in the case, we think it is proper for us to pass upon another question raised on the appeal, which is whether there is a triable issue concerning breach of an implied warranty of merchantable quality. KRS 361.150(2).

The plaintiff's complaint rests the case upon an implied warranty of fitness for a particular purpose, but the evidence considered on the motion for summary judgment was such as to furnish some basis for a claim of breach of warranty of merchantable quality. The question is whether, under the concept of "notice" pleading embodied in our Rules of Civil Procedure (see Clay, CR 8.01, Comment No. 1), the defendant was put on fair notice, by the complaint, of any claim that the building was so defective as not to be reasonably fit for general use as a building.

The complaint alleges that the building "developed holes and apertures, and leaked badly when there was rain". However, the only allegation as to the effect of this condition is that it rendered the building unfit for use as a commercial garage. There is nothing to put the defendant on notice of any claim that the building was not merchantable as such.

We can visualize some respects in which the defendant's preparation for the defense of a claim of breach of warranty of general merchantability might differ from that of a claim of breach of warranty of fitness for a particular purpose. Under all the circumstances, and in view of the fact that the status of the case will be such that the pleadings may be amended with permission of the trial court, we are unwilling to say that the pleadings as now constituted authorize the submission of an issue on breach of warranty of merchantable quality.

The judgment is reversed, with directions to set aside the summary judgment and to enter an order overruling the defendant's motion for a summary judgment.