**Bertha ROWLAND et al., Appellants,**

**v.**

**Minnie Dearing MILLER'S ADM'R (Louisville Trust Co.), et al., Appellees.**

Court of Appeals of Kentucky.

Nov. 9, 1956.

Rehearing Denied Dec. 13, 1957.

Woodward, Hobson & Fulton, R. I. Mc-Intosh, Louisville, for appellants.

Dodd & Dodd, Frank J. Dougherty, Jr., Louisville, for appellees.

STANLEY, Commissioner.

This is an appeal from a summary judgment in a will contest. It was rendered upon the record of the probate proceedings in the county court.

Two wills, bearing the same date, May 2, 1942, were executed by the late Mrs. Minnie Dearing Miller. One was holographic and the other a typed, witnessed will. There is no material difference in their substance. Both wills bequeathed the residuary of the estate to the testatrix' niece, Nancy D. Hill. Objection to probate of either instrument was made in the county court by another niece and a nephew of the testatrix. A special commissioner received evidence orally and by deposition on the issues of mental incapacity and undue influence and filed a report reviewing and evaluating the evidence and expressing the opinion that the proof was not sufficient to sustain the objections. His recommendation that the witnessed will be probated was accepted and that instrument was probated. The Louisville Trust Company was appointed administrator with will annexed.

The objectors in the county court seasonably filed an appeal to the circuit court in which they charged that the decedent was not competent to make the will and that it was executed as the result of undue influence on the part of Nancy D. Hill. All the original papers of the county court were transmitted to the circuit clerk. These included a transcript of the testimony heard by the special commissioner, his report, and the judgment thereon.

The appellees (so designated in the circuit court) or contestees (a designation herein as more distinctive) filed a motion for a summary judgment. The motion stated the proceedings in the county court and the fact that the transcript of the entire record was before the circuit court. The grounds of the motion were that the evidence in that transcript "with all inferences that a jury could justifiably draw from it, is insufficient to support a verdict for the appellants as to the lack of testamentary capacity of decedent so that such a verdict, if rendered on this evidence would be set aside, and by reason thereof, the appellees are entitled to have their motion for a summary judgment sustained herein to the same extent as if it were a motion for a peremptory instruction." The same grounds were stated as to the insufficiency of the evidence to support a verdict that the will was obtained by undue influence.

The judgment, following the order sustaining the motion, recites that the record before the court was conclusive that "there is no genuine issue of any material fact, challenged" and that it would be insufficient to support a verdict for appellants as to either grounds of contest "and appellants have a right to such a judgment as a matter of law."

Civil Rule 56.03 authorizes a summary judgment "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

In the present case the summary judgment, as we have said, rests on the evidence taken in the county court on the objection to probate of the instrument. Civil Rule 72.03 expressly declares that all appeals from the county and other inferior courts "shall be tried anew, as if no judgment had been rendered." This is the same as KRS 25.070. It has long been held, as stated in Hall v. Hall, 153 Ky. 379, 155 S.W. 755, 757, not only that the trial of a will contest on appeal is de novo but "the proceedings in the county court should not be read to the jury, as the jury are to decide the case from the evidence before them, and not from the judgment of the county court which is entitled to no weight on the jury trial." KRS 394.270, by negation, or per contra, prohibits the use of such evidence in the circuit court unless the witnesses are unavailable.

**6**

■ Nevertheless, the rationale behind the acceptable use of depositions filed in a former action that has been dismissed which involved the same subject matter as the action at bar or of answers to interrogatories or the like (6 Moore, Rule 56, p. 2060) warrants the use in considering a motion for a summary judgment of the evidence heard in the probate court. 6 Moore, Rule 46, p. 2127; Halterman v. Louisville Bridge & Iron Co., Ky., 280 S.W.2d 175. Of course, the opinion and report of the trial commissioner or the judgment of the county court cannot be regarded and should have no influence. The party adverse to the movant may, of course, by opposing affidavits or otherwise show the court that there is other evidence available that may be produced on the de novo trial. But in this case there were no countervailing affidavits or demonstration other than the record of the county court, nor was there any suggestion of additional accessible evidence for the contestants.

■ Our Rule 56 is the same as Federal Civil Rule 56, 28 U.S.C.A., and substantially like the rules in other states which have adopted the reformed practice. The courts have repeatedly admonished that the rule should be cautiously invoked; that it does not authorize the adjudication of factual issues but only authorizes the court by a pretrial sifting to penetrate the allegations of fact and to look to an evidential source or material extraneous to the pleadings solely to discover and determine whether there is an issue of fact to be tried. To that end, the supporting affidavits and depositions are to be carefully scrutinized by the court. Moreover, since the burden of establishing the nonexistence of any genuine issue of fact is upon the moving party, all doubts are to be resolved against him. If the evidentiary material on the one side and the other are directly opposed, the case must go on trial. Norwood Morris Plan Co. v. McCarthy, 295 Mass. 597, 4 N.E.2d 450, 107 A.L.R. 1215. It is not the purpose of the rule,

as has been often declared, to cut litigants off from their right of trial by jury if they have issues to try. Ohlinger's Federal Practice, Vol. 3–A, Notes to Rule 56; 6 Moore's Federal Practice, Vol. 6, Rule 56, pp. 2028, 2101, et seq.; 41 Am.Jur., Pleading, § 342. This court is in accord. Clay, CR 56; Watts v. Carrs Fork Coal Co., Ky., 275 S.W.2d 431; Hoskins' Adm'r v. Kentucky Ridge Coal Co., Ky., 277 S.W.2d 57; Continental Casualty Co. v. Belknap Hdw. & Mfg. Co., Ky., 281 S.W.2d 914, 915; Bell v. Harmon, Ky., 284 S.W.2d 812.

■■ Although the motion for a summary judgment is analogous to a motion for a directed verdict (Moore, Rule 56, pp. 2101, 2128), the consideration to be given the motions is not the same. There is a great difference between discovering whether there be an issue of fact and deciding such an issue. Farrall v. District of Columbia Amateur Athletic Union, 80 U.S. App.D.C. 396, 153 F.2d 647. And, we may add, for the judge to take a case from the court before the evidence is heard is an order more delicate and one which requires greater judicial discernment than for the judge to take the case away from the jury after he has heard the evidence.

In Halterman v. Louisville Bridge & Iron Co., Ky., 280 S.W.2d 175, 178, we took note that there are some Federal cases holding that a summary judgment is warranted where the evidence is such as to "require" or "compel" a directed verdict for the moving party and regarded such construction of Rule 56 as merely one of several approaches to the main question on a motion for a summary judgment, but stated, "Regardless of which approach is used, it seems that the rule should be that if there is any reasonable doubt on the question, a summary judgment should not be granted." We held in the case that the evidence on a previous trial and in pretrial depositions upon which the summary judgment was entered revealed there was a genuine issue of fact concerning the breach of an implied warranty and found it un-

necessary to decide upon the sufficiency of the evidence to authorize a directed verdict. This was followed in Proctor v. Cranfill, Ky., 280 S.W.2d 494.

We have found no better statement of the law relating to the point than that of the eminent Judge John J. Parker in Pierce v. Ford Motor Co., 4 Cir., 190 F.2d 910, op. cit. 915. Since it defines a standard for acceptable use, a full quotation is desirable.

"It is only where it is perfectly clear that there are no issues in the case that a summary judgment is proper. Even in cases where the judge is of opinion that he will have to direct a verdict for one party or the other on the issues that have been raised, he should ordinarily hear the evidence and direct the verdict rather than attempt to try the case in advance on a motion for summary judgment, which was never intended to enable parties to evade jury trials or have the judge weigh evidence in advance of its being presented. We had occasion to deal with the undesirability of disposing of cases on motions for summary judgment where there was real controversy between the parties in the recent case of Stevens v. Howard D. Johnson Co., 4 Cir., 181 F.2d 390, 394, where we said: 'It must not be forgotten that, in actions at law, trial by jury of disputed questions of fact is guaranteed by the Constitution, and that even questions of law arising in a case involving questions of fact can be more satisfactorily decided when the facts are fully before the court than is possible upon pleadings and affidavits. The motion for summary judgment, authorized by rule 56 Federal Rules of Civil Procedure, 28 U.S.C.A., which in effect legalizes the "speaking" demurrer, has an important place * * * in preventing undue delays in the trial of actions to which there is no real defense; but it should be granted only where it is perfectly clear that no

issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law. See Westinghouse Electric Corp. v. Bulldog Electric Products Co., 4 Cir., 179 F.2d 139, 146; Wexler v. Maryland State Fair, 4 Cir., 164 F.2d 477. And this is true even where there is no dispute as to the evidentiary facts in the case but only as to the conclusions to be drawn therefrom. Paul E. Hawkinson Co. v. Dennis, 5 Cir., 166 F.2d 61; Detsch & Co. v. American Products Co., 9 Cir., 152 F.2d 473; Furton v. City of Menasha, 7 Cir., 149 F.2d 945; Shea v. Second Nat. Bank, 76 U.S.App.D.C. 406, 133 F.2d 17, 22. As was said by Mr. Justice Jackson, speaking for the Supreme Court in Sartor v. Arkansas Nat. Gas Corp., 321 U.S. 620, 627, 64 S.Ct. 724, 728, 88 L.Ed. 967: "Rule 56 authorizes summary judgment only where the moving party is entitled to judgment as a matter of law, where it is quite clear what the truth is, that no genuine issue remains for trial, and that the purpose of the rule is not to cut litigants off from their right of trial by jury if they really have issues to try."'"

We summarize the testimony in the original probate proceeding which the trial court regarded as manifesting the non-existence of a genuine issue of fact.

On the one side there was, of course, evidence which supported the presumption of testamentary capacity and freedom from undue influence.

On the other side, the most material evidence may be stated. Mrs. Miller had resided in Morton Home, a church institution for elderly ladies, for some time before she executed the will on May 2, 1942. She was then 78 years old. The circumstances of making the will were related by the contestee Mrs. Hill, who was called by the contestants as a witness. She testified that her aunt had written her to come from her home in Chicago to Louisville, and she

arrived on April 30, 1942. Mrs. Miller told her she wanted to write her will and showed what she had written, adding that she was not sure that she had it straight. Mrs. Hill called attention to the fact that the paper was not dated and not witnessed. She testified, "One sentence was balled up," and references to certain stock certificates were faulty. Mrs. Miller said to her, "You write it." Further, "So, I wrote it and said, 'Now you read it over carefully and see if that is what you want and I will go and find some witnesses.'" The two ladies went to the office of the Home, and the will was signed there by the testatrix and the Superintendent and another officer of the Home as witnesses thereto.

A year later, on May 4, 1943, on the petition of Mrs. Hill, the testatrix was adjudged to be "a person of unsound mind and a lunatic; that the unsoundness of mind had existed several years." The preliminary examination of Mrs. Miller was by Dr. Gavin Fulton and Dr. W. E. Gardner. Their report to the court stated the history of the patient and her condition and that she was "an insane person and required supervision and control for her own welfare which can best be provided by commitment to the Central State Hospital." It is fair to say that the report and the judgment were made on stereotyped, printed forms, although, of course, the references to the individual were typed in. The testatrix was then placed in a private sanitarium where she died February 16, 1954.

The evidence concerning the mind of the testatrix while she was at the Morton Home, given by several of her old friends, some of whom also lived there, was of many instances of forgetfulness, irrationality, and actions typical of extreme senility and of a failing mind. These were not mere casual lapses but were, for illustration, that she would give away trinkets and other small things to friends or lose them and then charge that they had been stolen from her. Often these articles were found under the mattress of her bed or the

rug in her room where she had hidden them. Sometimes, in the course of a normal and rational conversation, she would suddenly completely lose the trend of the talk and, as a witness testified, "She had a lapse of memory and started living in the past and talked of things that I had heard her talk about in my childhood, and things that were upsetting to her, and got quite violent and started knocking books over the table and using words that I know weren't customary for her to use." Sometimes she thought she was being persecuted. She told friends that she had suffered a head injury in the past and "this old head of mine hasn't been right since it was cracked." Her niece, Mrs. Hill, had no knowledge of her receiving such an injury.

After the adjudication and while the testatrix was in the sanitarium, the manifestations of a confused mind became accentuated. One of the proprietors of the sanitarium gave an opinion, with reasons therefor, that Mrs. Miller did not have testamentary capacity in May, 1942. Dr. T. Norbert Kinde, a specialist in neuropsychiatry, testified the testatrix became his patient in May, 1945. Her condition then was "senile psychosis." Dr. Kinde signed her death certificate, stating, "Disease or condition directly leading to death: Arteriosclerotic coronary thrombosis" and as a contributing, significant condition, "chronic brain syndrome associated with brain disease" which had existed "about twelve years." His testimony reaffirmed these conditions with explanations and reasons for his opinion. Although expressed in technical terms and hedged about with qualifications, the doctor effectually expressed his opinion that the testatrix did not have testamentary capacity when she executed the will.

It is true that in the main, the factual evidence before the county court, and regarded by the circuit court on the motion for a summary judgment as evidential material, related to incapacity subsequent to the date of the will. But the evidence as

a whole tends to show there were infirmities before and at the time and that these infirmities were of a permanent nature and to show continuity of impairment which but increased in degree as time went along.

We need make no comment as to the probative value of any or all of this evidence. The weight of evidentiary material submitted in support of the motion for a summary judgment is of little, if any, consequence; nor, within reasonable bounds, is its competency important. Nevertheless, the trial court seems to have evaluated the evidence and reached the conclusion, as stated in the judgment, that it would not be sufficient to sustain a verdict against the will. We need make no comment as to the probative value of any or of all of this evidence, nor indicate any view on that point. Our opinion is that the disclosures made in the motion for a summary judgment do not show that there were no genuine issues of fact to be tried by the circuit court, and that sustaining the motion for a summary judgment was error.

Accordingly, the judgment is reversed.