CORDOVAN ASSOCIATES, INCORPO-
RATED, Defendant-Appellant,

v.

DAYTON RUBBER COMPANY,
Plaintiff-Appellee.

No. 14029.

United States Court of Appeals
Sixth Circuit.

June 7, 1961.

Robert F. Young, Dayton, Ohio, and Morton Honeyman, Roanoke, Va. (Harshman, Young, Colvin & Alexander, by Robert F. Young, Dayton, Ohio, on the brief), for appellant.

1. 279 F.2d 289.

James E. Corkey, Washington, D. C. (Philip C. Ebeling, Pickrel, Schaeffer & Ebeling, Dayton, Ohio, Gravelle, Whitlock, Markey & Tait, Washington, D. C., on the brief after remand by the Supreme Court; Pickrel, Schaeffer & Ebeling, by William G. Pickrel and Gordon H. Savage, Dayton, Ohio, on the brief), for appellee.

Before MARTIN, WEICK and O'SULLIVAN, Circuit Judges.

WEICK, Circuit Judge.

This case was remanded by the Supreme Court for consideration in the light of Commissioner of Internal Revenue v. Duberstein, 363 U.S. 278, 80 S.Ct. 1190, 4 L.Ed.2d 1218. Duberstein had not been decided at the time our original opinion in this case [1] was announced. We have complied with the mandate of the Supreme Court. Additional briefs were filed by counsel after the remand and the case was again heard on oral arguments.

As we understand Duberstein, not only are findings of fact made by the District Court binding on an appellate court unless clearly erroneous,[2] but the rule itself applies to factual inferences drawn from undisputed basic facts. United States v. United States Gypsum Co., 333 U.S. 364, 394, 395, 68 S.Ct. 525, 92 L.Ed. 746. But see: United States v. E. I. Du Pont DeNemours & Co., 353 U.S. 586, 598 footnote 28, 77 S.Ct. 872, 1 L.Ed.2d 1057. Even though an appellate court may draw different factual inferences from those of the District Court, it is not free to do so.

When it comes to conclusions of law and inferences to be drawn therefrom, the appellate court is free to act independently and draw its own legal conclusions and inferences. United States v. Mississippi Valley Generating Company, 364 U.S. 520, 526, 81 S.Ct. 294, 5 L.Ed.2d 268. If this were not so, the appellate court would be stripped of its

2. Rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C.A.

power of review. Moreover, not all findings labeled as findings of fact are binding on an appellate court. Where a finding designated as a finding of fact is not in reality a finding of fact, but is a conclusion of law or a mixed finding of fact and conclusion of law, it is not binding on the appellate court. Bogardus v. Commissioner, 302 U.S. 34, 58 S. Ct. 61, 82 L.Ed. 32; Weible v. United States, 9 Cir., 1957, 244 F.2d 158; Chandler v. United States, 7 Cir., 1955, 226 F.2d 403. Where a finding is of an ultimate fact in the making of which is involved the application of legal principles, it is subject to review. Baumgartner v. United States, 322 U.S. 665, 64 S.Ct. 1240, 88 L.Ed. 1525.

■ The interpretation and construction of a written contract are matters of law within the competence of the Court of Appeals to review and do not come under the clearly erroneous rule. Crosley Radio Corp. v. Dart, 6 Cir., 1947, 160 F.2d 426. In Eddy v. Prudence Bonds Corporation, 2 Cir., 1957, 165 F.2d 157, 163, certiorari denied Prudence Realization Corp. v. Eddy, 333 U.S. 845, 68 S.Ct. 664, 92 L.Ed. 1128 Judge Learned Hand said:

> "It is not necessary to analyze the mental process by which a court imposes legal consequences upon verbal utterances; possibly, it is proper to call the result a 'finding of fact.' It is enough here, that, whatever the right description, such a finding is assailable as an ordinary finding of fact is not; for appellate courts have untrammelled power to interpret written documents."

See also: Republic Pictures Corp. v. Rogers, 9 Cir., 1954, 213 F.2d 662, 665; United States v. John McShain, Inc., 1958, 103 U.S.App.D.C. 328, 258 F.2d 422, 425, certiorari denied 358 U.S. 832, 79 S.Ct. 52, 3 L.Ed.2d 70.

The contract, which was the subject of this action for declaratory judgment, was in writing. There was no dispute as to its terms and provisions.

The only controversy between the parties was as to the proper interpretation of the provision for prices to be paid for the tires, the contract providing that they were to be "prices prevailing on date of shipment." An identical provision was contained in the contract with White Stores, Inc., the other customer in Dayton's chain store division. Dayton figured the prices on what it termed the cost justification plan.

In a subsequent separate contract with White, Dayton lowered its prices to White about ten percent computing the prices on a new pricing plan which it termed "based on cost price."

The question to be determined is whether Cordovan was being charged "prevailing prices" under its contract when the only other customer in Dayton's chain store division received prices ten percent lower than the prices charged to Cordovan.

In our original opinion, we construed "prevailing prices" to mean "prices, which, at any particular time, are charged by a seller for a certain product." We said:

> "We think it would be illogical to hold that a seller may charge one of its two customers a lower price than the other for the same item, when both have contracts to receive goods at 'prevailing prices.' There can be only one 'prevailing price' at a given time; and, in the present context, it would fairly mean the *lowest* price for the commodity which the seller gives to either of his two large buyers in conformity with a contract provision for sales at 'prevailing prices.'" [279 F.2d 291.]

The course of dealing between the parties and the practical construction of the contract by them supports our views. The Trial Judge found that for many years the only two customers in Dayton's chain store division were billed the same prices before and after the contracts with identical price provisions.

Cordovan's contract with Dayton did not specify how or in what manner the prevailing prices were to be computed, i. e., whether by cost justification, cost price or any other method. It seems to us that it is immaterial how Dayton established its prevailing prices so long as Cordovan was not charged more than White for tires of the same type.

Appellee insists that we are precluded from disturbing the judgment of the District Court because of Finding No. 28 which is as follows.

"There was no provision, either oral or written nor were there facts from which an inference could be drawn that Cordovan prices were to be tied to White prices under all circumstances."

This finding cannot be considered separate and apart from the other findings, but must be considered with them.

■ Although Finding No. 28 was included by the learned District Judge in his findings of fact, we think that it might more properly have been included in his conclusions of law which were mixed with and not separated from his conclusions of fact. In our judgment, Finding No. 28 is either a conclusion of law or a mixed finding of fact and law. It might even be an ultimate finding which he made from all the evidence in the case after applying the law. Baumgartner v. United States, supra. In any event, we do not think it bars us from reviewing this case and correcting a judgment which we believe is wrong.

The written contract does not state that Cordovan's prices are to be tied to White's prices under all circumstances or any circumstances. In fact, in Cordovan's contract no mention is made of White. Cordovan could not complain if Dayton charged White a higher price or even ceased selling to White. As to this only White could complain.

■■ The District Court ruled that the contract was valid. If interpreted as appellee claims, it would be invalid and unenforceable. Where a contract is susceptible to different interpretations, the court will adopt the one which will give it validity, if it is reasonable, rather than one which renders it illusory. J. C. Millett Co. v. Distillers Distributing Corp., 9 Cir., 1958, 258 F.2d 139. We cannot presume that the parties intended to enter into a void contract. In our judgment, the contract in the present case is not reasonably subject to the interpretation which appellee would have us make. We can hardly believe that a chain store buyer would enter into a contract to buy its entire requirements of tires for two years which would permit the seller to charge the buyer any price the seller in its uncontrolled discretion might fix and which price had no relationship to prices charged other customers.

■ The fact that Cordovan, after it learned of White's new contract, unsuccessfully attempted to negotiate a similar new contract with Dayton does not militate against its right to enforce its existing contract which remained in full force and effect. Dayton was unwilling to enter into a similar new contract with Cordovan without imposing conditions which Cordovan would not accept.

Our interpretation of the contract is that under the circumstances of this case the term "prevailing prices" means the lowest prices for which the tires are sold. We are of the view that the District Court, in ruling otherwise, committed a mistake. United States v. United States Gypsum Co., supra. We adhere to our original judgment.

The judgment of the District Court is reversed and the cause remanded with instructions to determine the correct prices chargeable by Dayton to Cordovan Associates and approved distributors under the terms of the contract from June 1, 1958 to October 31, 1958 in accordance with the views herein expressed and enter judgment accordingly.