**ELYRIA-LORAIN BROADCASTING COMPANY, Plaintiff-Appellant,**

v.

**LORAIN JOURNAL COMPANY et al., Defendant-Appellee.**

**No. 14469.**

United States Court of Appeals
Sixth Circuit.

Dec. 16, 1961.

Thurman Arnold, Washington, D. C., and Marcus Cohn, Washington, D. C., Cohn & Marks, Washington, D. C., Arnold, Fortas & Porter, Washington, D. C., Herbert A. Rosenthal, Cleveland, Ohio, on brief, for appellant.

Raymond T. Jackson, Cleveland, Ohio, Warren Daane, Baker, Hostetler & Patterson, Cleveland, Ohio, Morris Berick, Burke, Haber & Berick, Cleveland, Ohio, on brief, for appellee.

Before MILLER, Chief Judge, and MARTIN and WEICK, Circuit Judges.

MARTIN, Circuit Judge.

This is an appeal by the plaintiff from a judgment dismissing the complaint in a suit for treble damages under Section 4 of the Clayton Act. 15 U.S.C.A. § 15.

In October of 1948, the plaintiff radio station (WEOL) began broadcasting operations designed to serve the Elyria-Lorain area of Ohio. The defendant newspaper (The Lorain Journal) at that time reached ninety-nine percent of the families in Lorain, and enjoyed a virtual monopoly over local advertising. Recognizing the competitive threat presented by the new radio station, the Journal refused to permit anyone who advertised over the radio to advertise in the newspaper. Many of the local businesses, by their very nature, required newspaper advertising; and the policy of the Journal regarding advertising almost succeeded in destroying the radio station.

Nearly a year after the radio station had commenced broadcasting, the United States brought suit in September of 1949 against the newspaper, seeking to enjoin an alleged violation of the anti-trust laws, specifically Sections 1 and 2 of the Sherman Act. 15 U.S.C.A. §§ 1 and 2. An injunction against the newspaper was granted in January of 1951. United States v. Lorain Journal Co., D.C., 92 F. Supp. 794. A direct appeal under Section 29, Title 15, U.S.C.A., was taken to the Supreme Court; and that court affirmed the action of the trial court. 342 U.S. 143, 72 S.Ct. 181, 96 L.Ed. 162 (1951).

Meantime, in July, 1951, the plaintiff radio station had begun a civil action for treble damages against the newspaper, under Section 4 of the Clayton Act. After some delay, the case was tried to a United States District Judge (sitting without the intervention of a jury), who found for the Journal and dismissed the complaint. The radio station has appealed from that judgment.

The District Judge delivered an opinion and filed Findings of Fact, the essence of which is set forth as part of Finding No. 8: "Radio failed to establish, by competent evidence, that it sustained any of such alleged damages, or, even if some damage had been sustained, that it was proximately caused by the Journal's advertising policies. Nor did Radio introduce any competent evidence from which the amount of any damages, if any, could be reasonably estimated or approximated, or could be estimated at all except by sheer speculation, guesswork or conjecture."

■■ We recognize that under Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A. as construed by the Supreme Court, we are bound not only by findings of fact adopted by the District Judge, but also by factual inferences drawn by him from undisputed

basic facts, unless they are clearly erroneous. Commissioner v. Duberstein, 363 U.S. 278, 80 S.Ct. 1190, 4 L.Ed.2d 1218. The fact that findings of the type of No. 8 are labelled "Findings of Fact" does not make them findings of fact if they are in reality conclusions of law and, if so, we are free to act independently and draw our own legal conclusions and inferences. United States v. Mississippi Valley Generating Co., 364 U.S. 520, 526, 81 S.Ct. 294, 5 L.Ed.2d 268; Cordovan Associates, Inc. v. Dayton Rubber Co., 290 F.2d 858, (C.A. 6). If, however, finding of fact No. 8 is considered to be a finding of fact, then in our judgment it is clearly erroneous and should be set aside.

The opinion of the District Judge in United States v. Lorain Journal Co., contained the following statement:

"Numerous Lorain County merchants testified that, as a result of the Journal's policy, they either ceased or abandoned their plans to advertise over WEOL." 92 F.Supp. 794, 796.

In its opinion, the Supreme Court further amplified the same theme:

"Numerous Lorain advertisers wished to supplement their local newspaper advertising with local radio advertising but could not afford to discontinue their newspaper advertising in order to use the radio.

"WEOL's greatest potential source of income was local Lorain advertising. Loss of that was a major threat to its existence. The court below found unequivocally that appellants' [appellees here] conduct amounted to an attempt by the publisher to destroy WEOL and, at the same time, to regain the publisher's pre-1948 substantial monopoly over the mass dissemination of all news and advertising.

"To establish this violation of § 2 as charged, it was not necessary to show that success rewarded appellants' [appellees here] attempt to monopolize. The injunctive relief under § 4 sought to forestall that success. While appellants' attempt to monopolize did succeed insofar as it deprived WEOL of income, WEOL has not yet been eliminated." 342 U.S. 143, 153, 72 S.Ct. 181, 186.

■ Thus was presented an extremely strong *prima facie* case for the plaintiff on the fact of damage. Defendants' contention that this fact was not essential to the determination of the Government's anti-trust case is effectively countered by plaintiff's reliance upon United States v. Oregon State Medical Society, 343 U.S. 326, 72 S.Ct. 690, 96 L.Ed. 978 (1952), where an injunction was denied for the reason that there was no present damage. *A fortiori,* where an injunction is granted there must have been a determination of present damage.

■ The appellant broadcasting company quite properly chose not to rely upon this *prima facie* case, however. It attempted, instead, to introduce evidence on the fact of damage. These attempts were frustrated many times by highly technical or erroneous rulings by the trial judge; but, even so, the plaintiff-appellant introduced enough evidence on the fact of damage to demonstrate that the finding of the United States District Court was clearly erroneous.

Numerous merchants testified that they had cancelled their advertising contracts with Radio Station WEOL. Those witnesses who were allowed to do so testified that the retaliatory policy of the Lorain Journal caused them to cancel their contracts with the broadcasting station. In one instance, the letter of cancellation was even dictated by a representative of the Lorain Journal Company.

Another group of witnesses testified that they did not begin advertising on the radio until after the injunction of January, 1951, had issued in the Government case, inasmuch as the Journal had informed them that they could not advertise in the newspaper if they advertised over Station WEOL.

Finally, the plaintiff-appellant introduced in evidence certain Tables, showing advertising revenues broken down by areas and years. Of all these exhibits, the following probably show most conclusively the fact of damage. Only such part of each Table as is considered pertinent here is reproduced.

Table I—Percentage of Revenue Obtained by WEOL from Lorain, Ohio, Merchants of Total Local Revenue.

| | |
|---|---|
| 1948 | 41.61% |
| 1949 | 21.46% |
| 1950 | 11.79% |
| 1951 | 29.81% |
| 1952 | 34.81% |
| 1953 | 34.53% |

Table II—Comparison of Revenue obtained by WEOL from Elyria, Ohio, with revenue obtained from Lorain, Ohio.

| | ELYRIA | LORAIN |
|---|---|---|
| 1948 | $ 9,744.03 | $10,705.74 |
| 1949 | 78,501.06 | 33,355.87 |
| 1950 | 86,629.53 | 20,076.97 |
| 1951 | 59,719.60 | 54,425.04 |
| 1952 | 68,561.42 | 70,987.80 |
| 1953 | 78,312.86 | 71,988.66 |

These abridged tables show clearly a marked decline in advertising revenue while the Lorain Journal's policy was in effect, and an equally marked increase in revenue when this policy was enjoined in 1951.

The finding of the District Court that the plaintiff had failed to prove the fact of damage is not in harmony with the fact that all plaintiff's evidence was largely uncontroverted.

The foregoing review of the evidence also refutes the finding that the plaintiff broadcasting company had failed to prove the advertising policy of the defendant newspaper to be the proximate cause of plaintiff's injury. See Richfield Oil Corporation v. Karseal Corporation, 271 F.2d 709 (C.A. 9, 1959). Further, there was testimony by the former Business Manager of the Lorain Journal that the policy of the defendant was, in fact, to refuse advertising space to anyone who advertised over the radio. Finally, there was no proof in the case as to anything else which might have caused the plaintiff's loss.

In the usual anti-trust case, proximate cause may present the problem of whether the plaintiff was within the "target area" of the proscribed activities. Karseal Corporation v. Richfield Oil Corporation, 221 F.2d 358 (C.A. 9, 1955). But, certainly, this can be no problem *here*, where the defendants' acts were admittedly aimed only at the plaintiff broadcasting company.

Plaintiff WEOL sought in the District Court to prove the amount of damages through expert witnesses and through various comparisons based on revenue. We find it unnecessary for us to review each of these methods and to comment upon them, inasmuch as it is obvious from the Tables set out herein that the District Court's finding of plaintiff's failure to prove the amount of damages was clearly erroneous. It is not for us to determine the amount of damages proved by the broadcasting company. It is sufficient to say that the plaintiff proved some damage. Bigelow v. RKO Radio Pictures, 327 U.S. 251, 66 S.Ct. 574, 90 L.Ed. 652 (1945).

Added to the matter of damages are certain questions of evidence which arose during the trial: (1) We think it was error to exclude many hypothetical questions that were clearly admissible under the authority of Dickerson v. Shepard Warner Elevator Co., 287 F.2d 255 (C.A. 6 1961). However, we do not need to decide whether this was prejudicial error, inasmuch as we have already indicated reversal on other grounds.

■ (2) Although it is true that the opponent may not object to a non-responsive answer on that ground alone, he may move to strike such an answer if it is objectionable for any other reason.

(3) Under Rule 32(c) (2), Federal Rules of Civil Procedure, it would seem that a party who has not objected to a leading question at the taking of a deposition may not subsequently object to it when the deposition is introduced at the trial.

(4) We agree with the trial court that a witness may not testify to what he would have done had the situation been different from what it actually was. Such an answer is too speculative to be admissible.

We conclude, therefore, that the finding of the United States District Court that the plaintiff-appellant had failed to prove the fact of damage, the proximate cause and the amount of damage, is clearly erroneous and should be set aside; and that the judgment dismissing the complaint should be reversed.

Accordingly, the cause is remanded to the District Court for further proceedings in compliance with this opinion.