358 F.2d 790
 The ELYRIA-LORAIN BROADCASTING COMPANY, Plaintiff-Appellant and Cross-Appellee,
v.
The LORAIN JOURNAL COMPANY, Isadore Horvitz, D. P. Self, Individuals, and Harry R. Horvitz, Willian D. Horvitz and Francis E. Kane, Executors of Estate of Samuel A. Horvitz, Defendants-Appellees and Cross-Appellants.
 No. 16244.
 No. 16245.
 United States Court of Appeals Sixth Circuit.
 April 12, 1966.
 
 Thurman Arnold and Marcus Cohn, Washington, D. C. (Cohn & Marks, Arnold, Fortas & Porter, Washington, D. C., Herbert A. Rosenthal, Harry Kottler, Daus, Schwenger & Kottler, Cleveland, Ohio, on the brief), for Elyria-Lorain Broadcasting Co.
 Morris Berick, Cleveland, Ohio (Warren Daane, Cleveland, Ohio, on the brief; Burke, Haber & Berick, Baker, Hostetler & Patterson, Cleveland, Ohio, of counsel), for Lorain Journal Co. and others.
 Before WEICK, Chief Judge, O'SULLIVAN, Circuit Judge, and CECIL, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 This case is before us a second time on the issue of damages. In the first appeal we reversed and remanded for a new trial because the District Court had found that plaintiff sustained no damage as a result of the unlawful conduct of defendants. Elyria-Lorain Broadcasting Co. v. Lorain Journal Co., 298 F.2d 356 (6th Cir. 1961). We were of the view that the findings of fact and opinion of the District Court,[1] affirmed by opinion of the Supreme Court in the Government's suit for injunction to restrain violation of the antitrust laws, presented an extremely strong prima facie case of the fact of damage. In addition to the prima facie case thus established, plaintiff in our judgment had introduced enough evidence of actual damage to show that the findings of fact of the District Court to the effect that no damage had been sustained, were clearly erroneous. 298 F.2d 356, 358.
 
 
 2
 The salient facts in this case appear in the previous decision of this Court and in the opinions of the District Court and of the Supreme Court in the Government's antitrust action for injunction, and need not be repeated here.
 
 
 3
 On the remand, the District Judge found damages in the amount of $10,000, which were trebled to $30,000, and allowed attorneys' fees of $25,000 and costs of $673.29. Plaintiff contends in the present appeal that the award of damages was grossly inadequate and that the trial court erroneously limited recovery to specific items of damage and allowed nothing for general damages, which it claims were clearly shown by the evidence.
 
 
 4
 The specific items of damage allowed by the District Court related to some sixteen radio advertisers who had been induced by defendants to cancel their contracts with plaintiff for radio advertising, or not to advertise over plaintiff's radio station until January 5, 1951, or not to renew advertising contracts, or not to expend additional sums in advertising during the period from 1948 through 1951. There were others, the Court in his opinion found,
 
 
 5
 "* * * who testified that they desired and intended to take out space with the radio station but somehow or other they didn't. As to those, we have no proof as to how long they would have taken out that space, how much they would have taken, what it would have cost."
 
 
 6
 There can be no question but that specific items of damage resulting from a violation of the antitrust laws were recoverable. They were known to the injured party and were the subject of proof. But plaintiff would have no knowledge of all the activities of defendants directed at inducing Lorain merchants to refrain from advertising over its radio station. The plaintiff would know that it was not receiving the radio advertising revenues which it could reasonably have expected to obtain from Lorain merchants. This appears by comparing plaintiff's revenues from Lorain with those from Elyria. The two cities are contiguous and located in the same county. Lorain was the county seat, had the larger population and, as we pointed out in our previous opinion, was plaintiff's greatest potential source of revenue.
 
 
 7
 A comparison may be made from the two tables appearing in our first opinion, which are set forth below.[2] During the first few months of operations, Lorain revenues slightly exceeded those from Elyria. Thereafter when the boycott became effective (1948-1951), Lorain revenues declined substantially. The lowest ebb was reached in August, 1950, when Lorain revenues totalled only $832.00, which did not include national advertisers. During the period from 1949 to 1951, inclusive, radio revenues from Elyria exceeded those from Lorain by nearly $117,000. Experts estimated the cost of handling additional Lorain business at percentages varying from 15 to 30% The experts agreed that there was a relationship between the amount of retail sales and radio revenues in a given city. The ratio was obtained from Elyria and used in Lorain computations, from which damage was estimated from $81,000 to $87,000, depending upon the percentage used in computing the cost of handling the additional business. The District Court gave no effect to the comparison of revenues of the two cities and allowed no general damages.
 
 
 8
 It is not the rule that in an action for damages for violation of the antitrust laws plaintiff is limited to recover only the specific items of damage which he can prove with reasonable certainty. On the contrary, the trier of the facts may make a just and reasonable estimate of the damage based on relevant data and may act upon probable and inferential as well as direct and positive proof. The wrongdoer should bear the risk of the uncertainty which his own wrong has created. Bigelow v. RKO Radio-Pictures, 327 U.S. 251, 66 S. Ct. 574, 90 L.Ed. 652 (1945); Story Parchment Co. v. Paterson Parchment Co., 282 U.S. 555, 51 S.Ct. 248, 75 L. Ed. 544 (1931); Eastman Kodak Co. v. Southern Photo Materials Co., 273 U. S. 359, 47 S.Ct. 400, 71 L.Ed. 684 (1927); Haverhill Gazette Co. v. Union Leader Corp., 333 F.2d 798 (1st Cir., 1964).
 
 
 9
 That the Court should have allowed recovery in some amount for general damages is clear from the evidence.
 
 
 10
 The unlawful boycott continued from almost the beginning of operations of the radio station in 1948 until the latter part of 1951 or the first part of 1952. It was not until January 28, 1952 that the defendants finally published the notice required by paragraph IV of the decree entered in the antitrust case, which publication was continued for twenty-four consecutive weeks.
 
 
 11
 Notwithstanding these unlawful activities which were causing loss of business to plaintiff in Lorain, defendants claim that operations of the radio station were nevertheless profitable in Elyria and surrounding territory, and hence plaintiff was not damaged. This contention overlooks the proposition that plaintiff was entitled to receive the benefits of income and profits resulting from operations in Lorain in addition to whatever profit it could realize elsewhere.
 
 
 12
 Defendants further contend that the radio station was inefficiently managed; that during the critical period (1948-1951) it had a high turnover in salesmen and managers; that it had an insufficient number of salesmen; that it concentrated its sales efforts in Elyria where the radio revenue increased in 1950 by $23,000; that it did not exercise its best efforts to obtain Lorain business in order to build up its damage claim.
 
 
 13
 The District Judge in his opinion did mention the loss of $13,000 revenue in Lorain in 1950, but concluded that it could be due to "management and turnover, lack of selling capacities and lack of salesmen." These were possibilities but in our judgment they were not established by the evidence. Defendants are certainly not in a very good position to complain about plaintiff's lack of ability to obtain Lorain business when they were conducting an effective boycott which was designed to and did interfere with plaintiff's efforts in this respect.
 
 
 14
 The argument that the radio station was inefficiently managed was refuted by the fact that its revenues outside of Lorain in the non-boycotted area increased constantly and substantially during the boycott period.
 
 
 15
 When a powerful newspaper is engaged in inducing Lorain merchants to cancel their radio advertising contracts with plaintiff and not to use plaintiff's facilities in advertising, it is only natural to expect that there would be a falling off of Lorain revenues and that radio salesmen would have more difficulty in procuring business in Lorain than in nonboycotted areas. The efforts of defendants to attribute the decline in Lorain revenues to other causes are not persuasive.
 
 
 16
 There was evidence that plaintiff had unfulfilled capacity to produce more gross revenues and profits. The number of its spot announcements during the boycott period was substantially fewer than that permitted by the Federal Communications Commission. It made drastic reductions in its spot announcement rates in order to procure more business, which would have been unnecessary if it had all the business it could handle.
 
 
 17
 Plaintiff further argues that the trial Court erred in fixing the cut-off date for determining damages at the end of 1951. It contends that the adverse effects of the boycott extended for a number of years beyond that date.
 
 
 18
 Damages may be recovered beyond the date of the filing of the complaint only when it is shown that they resulted from the original illegal acts which were the subject of the complaint. Lawlor v. Loewe, 235 U.S. 522, 35 S.Ct 170, 59 L.Ed. 341 (1915).
 
 
 19
 In the present case there was no evidence of any predatory activities of defendants after 1951. We are of the opinion that the District Court was correct in determining from the evidence which it was then considering, that no damage was sustained after 1951. The plaintiff, however, could introduce proof as to revenues in the subsequent years, not to establish damage in those years, but for whatever bearing such evidence would have on proving the damage sustained during the critical period. Herman Schwabe Inc. v. United Shoe Mach. Corp., 297 F.2d 906, 910 (2nd Cir. 1962).
 
 
 20
 Plaintiff further contends that the allowances for attorneys' fees were inadequate. The amount of fees to be allowed was within the discretion of the trial court. We cannot say that the Court in making the allowances abused its discretion. Plaintiff's counsel may apply to this Court for an allowance of fees for services rendered in the present appeal. They will be entitled to compensation for additional services rendered in the District Court pursuant to the present remand.
 
 
 21
 We find no error in the assessment of costs.
 
 
 22
 The award of $10,000 damages, trebled to $30,000, is vacated and set aside as inadequate and contrary to law. The allowance of attorneys' fees and costs is affirmed. This cause is remanded to the District Court for a new trial on the issue of damages and the allowance of attorneys' fees for services rendered subsequent to the present remand. In our opinion the retrial on the issue of damages could be had on the record of the case, supplemented by such additional testimony as either party may care to offer.
 
 
 23
 We do not pass upon the application of plaintiff to have this case assigned to a different Judge, as we doubt that the Judge who presided at the two previous trials would want to hear this case a third time. In the event, however, that any difficulty is encountered, plaintiff may renew its application to us.
 
 
 24
 In view of the length of time that this case has been pending, it should be promptly assigned for hearing.
 
 
 
 Notes:
 
 
 [1]
 United States v. Lorain Journal, 92 F.Supp. 794, aff'd 342 U.S. 143, 72 S.Ct. 181, 96 L.Ed. 162
 
 
 [2]
 
 TABLE I — Percentage of Revenue Obtained by WEOL from Lorain,
 Ohio Merchants of Total Local Revenue:

 1948 . . . . 41.61%
 1949 . . . . 21.46%
 1950 . . . . 11.79%
 1951 . . . . 29.81%
 1952 . . . . 34.81%
 1953 . . . . 34.53%

 TABLE II — Comparison of Revenue Obtained by WEOL from Elyria,
 Ohio with Revenue Obtained from Lorain, Ohio:

 Elyria Lorain
 1948 $ 9,744.03 $10,705.74
 1949 78,501.06 33,355.87
 1950 86,629.53 20,076.97
 1951 59,719.60 54,425.04
 1952 68,561.42 70,987.80
 1953 78,312.86 71,988.66