**ASHLAND OIL & REFINING COM-
PANY, Plaintiff-Appellant,**

v.

**KENNY CONSTRUCTION COMPANY,
Defendant-Appellee.**

No. 17720.

United States Court of Appeals
Sixth Circuit.

May 29, 1968.

W. H. Dysard, Ashland, Ky., Dysard,
Johnson & Welch, Ashland, Ky., on brief;
Arloe W. Mayne, General Counsel, Ash-
land Oil & Refining Co., Ashland, Ky.,
of counsel, for appellant.

Stephen A. Milwid, Chicago, Ill., R.
R. McMahan, Lord, Bissell & Brook, Chi-
cago, Ill., Herbert L. Rose, Nickell, Fan-
ning & Rose, Ashland, Ky., on brief, for
appellee.

Before PECK and McCREE, Circuit
Judges, and CECIL, Senior Circuit
Judge.

JOHN W. PECK, Circuit Judge.

Ashland Oil & Refining Company
(herein "plaintiff") brought suit to re-
cover damages to two of its steam gen-
erators allegedly caused by the blasting
operations of Kenny Construction Com-
pany (herein "defendant"). After a four
day trial to the District Court sitting
without a jury, judgment was entered
for defendant in accordance with the
trial court's finding that plaintiff failed
to prove the blasting proximately caused
the damage complained of by a preponder-
ance of the evidence. The issue present-
ed on plaintiff's appeal is whether the
evidence supports this determination.

In November 1956, plaintiff installed
the two generators in suit for use in con-
nection with a Fluid Catalytic Cracking
Unit in its refinery near Catlettsburg,
Kentucky. Each generator contained 202
tubes, approximately $1\frac{1}{2}$ inches in diam-
eter and 34 feet in length, which were in-
serted through two "tube sheets," one
referred to as the "top sheet" and the
other as the "floating" or "bottom sheet."
Once inserted through the holes in the
$7\frac{1}{2}$ inch thick top sheet, the tubes were
secured by a "rolling" process, whereby
they were pressed against the walls of
the top sheet. In addition to the great
weight of the tubes and bottom sheet
suspended from the top sheet in the above
noted manner, the tubes were subject to
stresses due to internal pressures of ap-
proximately 450 pounds per square inch
and temperature variances from 550° to
1200° F. Each generator was housed
in a 150 foot high tower.

During the period from March to May,
1962, defendant set off fifty-eight explo-
sions, or shots, of various sizes and at
varying distances from plaintiff's re-

finery. After plaintiff notified defendant of its concern over the concussions being experienced due to the blasting operations, each party employed an expert in the field of vibration measurement to determine the possibility of plaintiff's equipment being damaged. Plaintiff's expert was of the opinion that the blasting operation endangered the equipment, while defendant's expert opined that it did not. In May, 1962, the generators developed trouble, and when they were shut down on May 30, it was discovered that approximately half of the tubes in each one were leaking.

■ While the timing of the sequence of events in this case constitutes circumstantial evidence of a causal relationship between the blasting operation and the damage to the generators, plaintiff concedes that, without more, "mere temporal sequence does not establish cause and effect." The record shows that the two generators in suit, as well as similar generators in plaintiff's other plants, had operated for years prior to the commencement of the blasting without incident and that no leaks were found in the two generators during the course of a routine inspection in May, 1961. Further, one of plaintiff's employees testified that an 18 inch water pipeline on plaintiff's premises ruptured at a joint immediately after a blast had been detonated a relatively short distance from the pipeline, and plaintiff's expert witness opined that a crack found in the tower supporting the generators on May 31, which this witness claimed was not there on May 18, was caused by defendant's operations.

In support of the District Court's decision, defendant emphasizes that leaks were detected in the tubes of the two generators in question several months after they were installed in 1956, and to a lesser extent, in 1963, after defendant's blasting operations had ceased and repairs had been made; that the top sheet of one of the generators was found to be warped upon inspection of the units after they were shut down; and that environmental vibration was present at the base of the tower in which the generators were located. In addition to the above evidence, the District Court heard rather lengthy testimony of the expert witnesses for both parties in which reference was made to seismograph measurements taken at several points in the refinery, and to independent studies on blasting and its effects. As noted by the trial judge, the testimony of these two witnesses was contradictory on the issue of causation.

■ The District Court's determination that plaintiff "failed to sustain the burden of showing that defendant's blasting operations damaged plaintiff's equipment or caused said leaking of the generators," while labeled a conclusion of law, may more accurately be regarded as a mixed finding of law and fact or as a finding of an ultimate fact. If regarded as a finding of fact (See McAllister v. United States, 348 U.S. 19, 75 S.Ct. 6, 99 L.Ed. 20 (1954); Elyria-Lorain Broadcasting Co. v. Lorain Journal Co., 298 F.2d 356 (6th Cir. 1961)) we cannot say that it is clearly erroneous. Rule 52, F.R.Civ.P. If regarded as a mixed finding, the application of legal principles was involved in making the determination, and it is therefore subject to review free from the clearly erroneous rule. See Taft Broadcasting Co. v. Columbus-Dayton Local, 297 F.2d 149 (6th Cir. 1961); Cordovan Associates, Inc. v. Dayton Rubber Co., 290 F.2d 858 (6th Cir. 1961). Plaintiff does not contend, nor do we find, that the District Court applied an incorrect principle of law to the facts, and while that court's determination is not the only one permissible under the facts, it is supported by substantial evidence and is not unreasonable. Accordingly, the judgment of the District Court should be affirmed.

Affirmed.