**UNION PLANTERS NATIONAL BANK OF MEMPHIS, Plaintiff-Appellee,**

v.

**UNITED STATES of America, Defendant-Appellant.**

**No. 19409.**

United States Court of Appeals, Sixth Circuit.

May 4, 1970.

Richard B. Stone, Dept. of Justice, Washington, D. C., for defendant-appellant; Johnnie M. Walters, Asst. Atty. Gen., Lee A. Jackson, William Friedlander, Louis M. Kauder, Attys., Dept. of Justice, Washington, D. C., on brief; Thomas F. Turley, Jr., U. S. Atty., Memphis, Tenn., of counsel.

Cooper Turner, Memphis, Tenn., for plaintiff-appellee; John C. Kimbrough,

Memphis, Tenn., on brief; Canada, Russell & Turner, Memphis, Tenn., of counsel.

Before CELEBREZZE, McCREE, and COMBS, Circuit Judges.

McCREE, Circuit Judge.

This appeal presents the question whether coupon interest collected by a bank as owner of municipal bonds subject to repurchase agreements is exempt from taxation under § 103(a) of the Internal Revenue Code. We hold that under the circumstances of this case it is not, and accordingly we reverse the decision of the District Court, 295 F.Supp. 1151 (W.D.Tenn.1968). Since 1938 or 1939, appellant Bank has purchased municipal bonds[1] from local bond dealers, subject to agreements permitting the Bank to require repurchase by the dealer at any time at the price paid by the Bank. The evidence does not disclose an instance when the Bank invoked this provision. Rather, as the District Judge found, "it was the intent and practice that the bonds be re-acquired by the dealer upon the dealer's request * * *." 295 F.Supp. at 1152. The dealer usually repurchased the bonds when he had found a customer for them. The Bank invariably resold to the dealer at the same price it had paid him (this price was either the dealer's cost or a lower figure), and the dealer's repurchase at this price protected the Bank from experiencing any loss on the transaction.

During the period in which the Bank held the bonds, it would clip bond coupons as they matured and collect and retain the interest. On repurchase by a dealer, the Bank would be credited with the pro rata interest accruing from the last coupon redemption date until the date of repurchase. The tax treatment of coupon interest realized by the Bank in this manner in the years 1961–64 is the subject of this appeal.

The Bank claims that since it was the owner of the bonds and the coupons, the interest income from them should be exempt from taxation under § 103(a). The Government, on the other hand, insists that each transaction between the Bank and the dealers was in reality a loan secured by what was in effect a pledge of the bonds. Thus, the coupon interest belonged to the dealers and, when they permitted the Bank to keep it, they were paying the Bank what was in effect ordinary interest on the loan, which is income not exempt from taxation under § 103(a). Viewed in this context, the Government argues, the transactions constitute an attempt to avoid the effect of § 265(2) of the Internal Revenue Code. This provision disallows deductions of interest paid on loans the proceeds of which are used to buy municipal bonds. Its obvious purpose is to deny the recipient of tax exempt income the further tax benefit of deducting the cost of money employed to purchase the securities which produce it. Accordingly, if the dealer had borrowed the money to purchase the bonds, the coupon interest would be tax-free to him, but he would not be able to deduct the interest paid to the Bank for the loan; and the Bank, of course, would be taxed fully on the income represented by that interest. But if the transactions are characterized as sales-repurchases, the Government contends, the Bank will avoid paying tax on the coupon interest, which in economic effect is equivalent to interest paid for the use of its money, and the dealer will have obtained the funds to purchase the bonds without paying interest. Thus, if the parties' characterization of these transactions is accepted as decisive for federal income tax purposes, they would be able to enjoy the benefit of the double tax advantage which Congress intended to prevent.

The form of these transactions tends to support the Bank's arguments. And

1. The term "municipal bonds" is used in this opinion to include those bonds and obligations issued by states, municipal-ities, and other local governmental units, which qualify for the exemption granted by § 103(a).

the Government does not dispute the fact that the Bank held title to the bonds in a property law sense. Moreover, the Bank did not list these transactions on its books as "loans" except when required to do so by the Comptroller of the Currency from 1957 to 1964.[2]

However, other facts found by the District Court support the Government's position. The bond dealers would list these bonds for sale in trade publications in the same manner as bonds to which they held legal title. When a dealer found a customer for the bonds, he would repurchase them from the Bank which never refused to resell although, under the written repurchase agreements, it was not bound to do so. The District Judge found that it was understood between the parties that the Bank would always consent to such repurchases. Most important, the Bank was protected under the repurchase agreements from suffering any loss, and its gain was limited to the amount of coupon interest accruing during the time it held the bonds.[3] In some cases, when the market price of the bonds was falling, the Bank required the dealer to pay, in advance of repurchase, money sufficient to protect it in the declining market. Obviously this practice served the same purpose as the requirement of the posting of additional margin by a borrower whose security is decreasing in value. It is clearly more consistent with the characterization of these transactions as loans than as sales.

■ The District Court, in ruling for the Bank, held that "[t]he determination of this case requires an inquiry into the intent of the parties." 295 F.Supp. at 1152. We do not agree that subjective intent is decisive here. The intent of the parties may be important in determining just what their contractual relations *inter sese* were, but there is little dispute here about what obligations and rights the parties expected their agreement to confer. This case hinges, rather, on the legal characterization, for federal income tax purposes, of the transactions between the parties. That characterization is not a question of fact, but rather one of law. *Cf.* Cordovan Associates, Inc. v. Dayton Rubber Co., 290 F.2d 858 (6th Cir. 1961). Accordingly, we are not bound by the District Court's conclusion that the Bank should be treated as the owner of the bonds for federal income tax purposes.[4]

We are not here concerned with an area of the law where intent determines whether or not an increment of wealth is to be deemed income, as was the case in Commissioner of Internal Revenue v. Duberstein, 363 U.S. 278, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960), where the presence or absence of a subjective state of

2. Although not listed as loans during 1938–57 and 1964–70, nevertheless they were not carried on the Bank's books in the same category as bonds purchased for investment, which were of course not subject to the kind of repurchase agreements we are concerned with here.

3. On three occasions when the dealer refused to repurchase on demand by the Bank, the Bank sold the bonds to a third party and kept the resulting profit. The record does not disclose the details of these transactions, except that in one case the dealer was "probably insolvent". We would assume that all three dealers in question were insolvent or defunct; otherwise why would they refuse to repurchase when a profit was apparently guaranteed? In any event, these isolated incidents do not alter our opinion about the substance of the many dozens of these transactions.

4. The intent which the District Court found binding was apparently the bank's intent to adopt the form of sale and repurchase, rather than that of a secured loan. It should come as no surprise that taxpayer wished to characterize the transactions in this way, because it results in minimum tax liability, and does not give any of the parties any economic rights which they would not have had if the transactions had been characterized as loans. If this kind of intent is to be decisive, then, as the Government argues, any taxpayer could "determine its own tax liability by choosing the names which its arrangement should be called when those labels will affect nothing but its tax liability." *Cf.* Burnet v. Harmel, 287 U.S. 103, 110, 53 S.Ct. 74, 77 L.Ed. 199 (1932).

mind, donative intent, was declared to be decisive. Here the question is not whether or not an increment of wealth is income (for it clearly is), but whether it is income from interest paid by a borrower, or tax exempt interest income from municipal bonds.

■ In cases where the legal characterization of economic facts is decisive, the principle is well established that the tax consequences should be determined by the economic substance of the transaction, not the labels put on it for property law (or tax avoidance) purposes. E. g., Commissioner of Internal Revenue v. P. G. Lake, Inc., 356 U.S. 260, 266–267, 78 S.Ct. 691, 2 L.Ed.2d 743 (1958); Gregory v. Helvering, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596 (1935). "In the field of taxation, administrators of the laws, and the courts, are concerned with substance and realities, and formal written documents are not rigidly binding." Helvering v. F. & R. Lazarus & Co., 308 U.S. 252, 255, 60 S.Ct. 209, 210, 84 L.Ed. 226 (1939).

■ Here it is clear that the coupon interest functioned as the interest collected on a loan, however the parties may have characterized the transactions on their books. Like any secured lender, the Bank took great pains to insure itself against any loss of principal, even to the extent of requiring margin payments (which took the paper form of advances on the repurchasing price). And like any borrower on security, the dealer was obliged to pay only the amount of the principal in order to extinguish his obligation, besides having to forego the gains he would otherwise have made through the maturing of interest coupons. In contrast, in a transaction that would be characterized as a sale for tax purposes, we would expect the Bank, rather than the dealer, to assume the risk of fluctuations in the market value of the bonds.

The Fifth Circuit has recently ruled for the Government in a substantially identical case. American National Bank of Austin v. United States, 421 F.2d 442 (1970). We think that the Government's case here is, on balance, stronger than in the Bank of Austin case. Here, there were written repurchase agreements under which the Bank could oblige the dealer to repurchase at any time at a price which would guarantee the Bank against any loss; in Austin, the dealers had only an unwritten option to repurchase, and there was no written contract as there was here. Other differences between the operations of the Austin and Memphis banks[5] we deem immaterial.

We hold, for the reasons found persuasive by the Fifth Circuit in Judge Ainsworth's opinion, that these transactions, although characterized as sales-repurchases by the parties, will be regarded as secured loans for federal income tax purposes, and that accordingly, the Bank, as economic lender, cannot exclude the bond interest from its taxable income. The judgment of the District Court is reversed, and the case is remanded for entry of judgment and other proceedings not inconsistent with this opinion.

---

5. Apparently the Austin bank usually conveyed bonds directly to customers of the dealers. The Memphis bank, with a few exceptions, consistently observed the formalities of sale and repurchase. Of course such adherence is not dispositive in tax cases when the real question is the economic substance of the transaction.