**FIRST AMERICAN NATIONAL BANK OF NASHVILLE, Plaintiff-Appellant,**

v.

**UNITED STATES of America, Defendant-Appellee.**

**No. 71-1491.**

United States Court of Appeals, Sixth Circuit.

Oct. 4, 1972.

---

William Waller, Nashville, Tenn., for plaintiff-appellant; Waller, Lansden, Dortch & Davis, Nashville, Tenn., on brief.

Virginia M. Hopkinson, Atty., Tax Div., Dept. of Justice, Washington, D. C., for defendant-appellee; Charles H. Anderson, U. S. Atty., Nashville, Tenn., Johnny M. Walters, Asst. Atty. Gen., Fred B. Ugast, Meyer Rothwacks, Grant W. Wiprud, Attys., Tax Div., Dept. of Justice, Washington, D. C., on briefs.

Before McCREE and KENT, Circuit Judges, and O'SULLIVAN, Senior Circuit Judge.

PER CURIAM.

This is an appeal from the district court's denial of plaintiff's action to recover income taxes paid on certain interest income for the years 1961, 1962, and 1963. A number of other issues were decided, but no appeal has been taken from the district court's disposition of them. The case was submitted on the pleadings and a stipulation of facts.

Plaintiff bank, a licensed bond dealer, instituted this action to recover taxes paid on interest it received from municipal bonds. Such interest is ordinarily

tax-exempt under Internal Revenue Code § 103(a), and it had been so reported by the bank. The Commissioner of Internal Revenue disallowed this treatment with respect to several categories of bond purchases by appellant, only three of which concern us on this appeal:

(1) Instead of purchasing municipal bonds for which they had successfully bid, certain bond dealers orally agreed with appellant that the bank would buy the bonds from the issuers and later sell them to the dealers at the price the bank had paid. Until these latter sales occurred, the bank in each case accrued the interest on the bonds at the coupon rate and credited this interest to an exempt-interest account. In no case did a successful bidder fail to buy the bonds from the bank at the bid price.

(2) Instead of consummating purchase agreements they had made with bond dealers, certain customers of appellant orally agreed with the bank that it would acquire the bonds from the dealers and later sell them to the customers at the prices it had paid, with adjustments for accrued interest. Here, too, the bank reported the accrued interest as tax-exempt income.

(3) Appellant purchased municipal bonds from bond dealers and later sold the bonds to various trusts for which its trust department acted as trustee. Prior to these purchases, officers of appellant's trust department indicated to officers of its commercial department that the bonds under discussion were suitable for trust accounts and that the trust department desired to acquire them for its accounts when funds were available. Usually, it was not known at the time of purchase by the commercial department to which trust accounts particular bonds would be allocated, although sometimes a particular lot of bonds was earmarked for transfer to a particular trust account when the account had funds available. Until the trust accounts purchased the bonds, appellant kept them in its regular investment account. When the trust accounts acquired the necessary funds, they paid the commercial department the cost of the bonds plus accrued interest and took possession of the bonds in return. Here, too, appellant reported the interest it received on the bonds as tax-exempt income.

The district court, 327 F.Supp. 675, agreed with the Commissioner that the interest accruing on these categories of bonds between the time of appellant's acquisition and disposition of them was not tax-exempt. Relying on American National Bank of Austin v. United States, 421 F.2d 442 (5th Cir. 1970), and Union Planters National Bank of Memphis v. United States, 426 F.2d 115 (6th Cir. 1970), the court held that the "material fact" was "that the bank had the ability in these transactions to insulate itself from any loss and at the same time had possession of the bonds as security." We agree.

The *American National Bank* case concerned transactions similar in substance to those described in category (1), *supra*. In that case, the Fifth Circuit held that, for tax purposes, the bank functioned as a secured lender in its transactions with the bond dealers. In *Union Planters*, we applied the same rationale to arrangements under which a bank purchased bonds from dealers upon the written promise of the dealers to repurchase the bonds at the price paid by the bank plus accrued interest. We expressly approved in *Union Planters* the reasoning of Judge Ainsworth in *American National Bank*, 426 F.2d at 118.

Appellant, although conceding that categories (1) and (2), *supra*, are "similar in substance" to the transactions discussed in *American National Bank*, urges us to reject the reasoning of that case on the ground that the Fifth Circuit ignored the line of authority holding that, for tax purposes, ownership does not pass until property is actually delivered pursuant to a contract of sale. Under this rule, an option to buy or any other contract to sell is deemed a mere executory contract and does not pass

ownership. *See, e. g.,* Lucas v. North Texas Lumber Company, 281 U.S. 11, 50 S.Ct. 184, 74 L.Ed. 668 (1930). Thus, appellant contends, ownership of the bonds in question did not pass to the bond dealers or the bank customers, respectively, until those parties actually paid for the bonds and took delivery of them. It further argues that *Union Planters* is inapposite here both because appellant is a licensed bond dealer and because it did not acquire the bonds from the parties to which it ultimately sold them. Our expression of approval of the *American National Bank* decision in *Union Planters* is asserted to be dictum and not binding because we regarded the Government's case there as a stronger one than that presented in the Fifth Circuit decision. 426 F.2d at 118.

■ We see no merit to any of these contentions. As appellee observes, a lender of the purchase price of municipal bonds should not be able to collect interest tax-free on the bonds as payment for lending the money. *See Union Planters, supra,* 426 F.2d at 116–117. Yet, under the arrangements described herein, as in *American National Bank* and in *Union Planters,* the bank in effect is lending money to purchase bonds and is paying no tax on the interest received. Moreover, the person who purchases the bonds from the bank in effect borrows money to buy the bonds without paying interest. This results in the double tax benefit that Congress intended to prevent by enacting I.R.C. § 265(2). *Union Planters, supra,* 426 F. 2d at 116. And, the bank is completely insulated from the risk of market fluctuations in this type of transaction—its investment is completely secured since it is assured of receiving the price it paid for the bonds. In these circumstances, the bank in substance is clearly a secured lender instead of an owner.

■ We therefore reiterate our approval of the *American National Bank* decision, and we hold the rationale of that case to be equally applicable to the transactions described in categories (1) and (2), *supra.* As appellee points out,

appellant's reliance on the *Lucas* line of authority begs the question—the issue in this case is whether appellant *ever owned* the bonds for tax purposes, not whether appellant surrendered ownership at the time the contracts for sale were executed. We hold, for the reasons found persuasive in *American National Bank* and *Union Planters,* that appellant in substance never owned the bonds described in categories (1) and (2), *supra, cf.* Commissioner of Internal Revenue v. Court Holding Company, 324 U.S. 331, 65 S.Ct. 707, 89 L.Ed. 981 (1945), and thus was not entitled to a tax exemption for the interest that accrued on the bonds during the period under consideration.

With respect to the bonds described in category (3), *supra,* appellant contends that it would be unrealistic to regard the bank as a secured lender. It was stipulated that, with the exception of two of the trust accounts involved in these transactions, the bank as trustee had no authority to borrow funds for the purpose of investing trust assets. Moreover, appellant contends that the risk of depreciation in value lay on the commercial department and not on the trust accounts since a trustee, under well-established principles of trust law, is not allowed to "purchase bonds from itself at a price higher than it would purchase similar bonds from an outsider, even though the bonds had been earmarked for the particular trust account."

■ The record on appeal is unclear concerning the exact terms of the agreements between officers of appellant's trust and commercial departments. However, it was stipulated that "[t]he trust accounts paid the bank the cost of the bonds plus accrued interest." It thus appears that, appellant's protestations to the contrary notwithstanding, the trust department did indeed indemnify the commercial department against any depreciation in the value of the bonds. In these circumstances, we see no significant difference between the intra-bank transactions and those described in categories (1) and (2), *supra.*

Nor do we think it significant that not all the bonds purchased for the trust department were earmarked for specific trust accounts; the significant fact is that the bonds were acquired and held for the purpose of ultimately transferring them to the trust accounts, in a manner insulating the bank from the risk of market fluctuations.[1]

Affirmed.

O'SULLIVAN, Senior Circuit Judge (dissenting in part).

I concur in the opinion of the court except as it relates to bonds acquired by appellant bank and later sold to various trusts under administration in its trust department. As to the other tax free bonds which were acquired by the bank and sold to customers, I believe that this Court's decision in Union Planters National Bank of Memphis v. United States, 426 F.2d 115 (6th Cir. 1970), established the law of this Circuit. In that case, we followed the Fifth Circuit's decision in American National Bank of Austin v. United States, 421 F.2d 442 (1970). But neither of these decisions dealt with a bank acquiring tax free bonds for ultimate acquisition as investments by trust accounts being administered by the bank's trust department.

The Act of Congress providing exemption of publicly issued bonds provides in 26 U.S.C. § 103(a)(1) as follows:

"(a) *General Rule.*—Gross income does not include interest on—

(1) the obligations of a State, a Territory, or a possession of the United States, or any political subdivision of any of the foregoing, or of the District of Columbia;"

This is plain language, and I find nothing in the conduct of the bank or its trust officers which made it necessary for the bank to include in its taxable income that which the Internal Revenue Code says is not to be included.

Section 264(a) of the Code provides against abuse of Section 103(a)(1) by forbidding deduction from income of interest paid on borrowings made for the purpose of acquiring tax free bonds. Section 265(2) provides:

"No deduction shall be allowed for—

\*       \*       \*       \*       \*       \*

(2) *Interest*—Interest on indebtedness incurred or continued to purchase or carry obligations (other than obligations of the United States issued after September 24, 1917, and originally subscribed for by the taxpayer) the interest on which is wholly exempt from the taxes imposed by this subtitle. . . ."

In my view, the above language has no application to the transactions here involved. Neither the bank nor its trust accounts have deducted from income interest paid on any borrowings made for acquisition of tax-exempt bonds. The conclusion that there was somehow a tax evasion in the transaction between the bank and its trust accounts appears to derive from the fact that it was stipulated that "the trust accounts paid the bank the cost of the bonds plus accrued interest." There is no evidence in the record to show that any of the bonds purchased by the Trust Department had declined in value from the time of the original purchase to the date of a trust estate's acquisition of them. If the trust accounts paid more than the market value of acquired bonds, there might indeed be a breach of fiduciary duty upon the part of the trust officer. Such conduct, however, would not repeal Section 103(a)(1) so as to make taxable what that Section says is *not taxable*. I am unable to find illegality or immorali-

1. We emphasize that our holding with respect to the bonds involved in the intra-bank transactions is narrowly based upon the stipulation that the trust accounts always purchased the bonds from the commercial department at the price paid by the latter plus accrued interest. We expressly do not decide whether in all circumstances a bank's commercial department should be denied a tax exemption for interest accruing on bonds that it purchases in contemplation of eventual sale to the bank's trust department.

 

ty in the handling of bonds for the bank's trust accounts, and the United States was not denied any tax revenue that was due to it.

I would vacate the District Court judgment as it relates to the bonds acquired by the appellant bank's trust accounts.