382 So.2d 861 (1980)
D.W. GILMORE, As Trustee in Bankruptcy for the Estate of Financial Corporation, Appellant,
v.
STATE BOARD OF ADMINISTRATION OF FLORIDA, Appellee.
No. PP-34.
District Court of Appeal of Florida, First District.
April 23, 1980.
*862 David G. Hanlon of Shackleford, Farrior, Stallings & Evans, Tampa, and Albert W. Thomson of Linde, Thomson, Fairchild, Langworthy & Kohn, Kansas City, Mo., for appellant.
Ford L. Thompson of Thompson, Wadsworth, Messer, Turner & Rhodes, Tallahassee, for appellee.
WENTWORTH, Judge.
The appellant/plaintiff trustee for Financial Corporation appeals from a judgment entered for appellee/defendant State Board after trial before the court.
The trustee, on alternative theories of resulting trust under common law principles or provisions of Ch. 679, Florida Statutes, claims proceeds from the Board's sale of U.S. treasury bills and notes in excess of the amount the Board would have received under a repurchase agreement on which the Corporation defaulted before the sale. The trustee argues that the transactions were merely collateralized loans. We affirm because we find no error in the ruling against the trustee on the evidence as to that issue, and a second issue as to computation of interest does not require disposition.
The trial court found that appellant proved only a sale and purchase of specific securities "subject to [the Corporation] plaintiff's agreement to repurchase similar securities" at a given time, place and price. This finding was based on evidence that the parties' contractual relations were governed mostly by oral communications and customary usage in the market.
By transactions in June and July 1975, the State Board made short term investments in U.S. treasury bills and notes through a security brokerage firm acting for Financial Corporation. These transactions involved payment of more than 45 million dollars for securities having a face value over 46 million dollars. A typical Corporation memorandum confirming a sale simply described the amount, denomination and maturity date of the securities, and bore the inscription: "It is expressly understood and agreed that title to these securities shall remain vested in Financial Corporation until full payment in cash or its equivalent is made therefore." (e.s.) A report on June 17, 1975, by a bank states as to securities received for the Board that "[t]hese securities are sold to you under agreement to repurchase, Interest rate 5.35%, Interest at maturity $4,458.33, Pay Out 7/17/75." (e.s.) Other transactions contemplated that equivalent securities would be resold by the Board and repurchased by Corporation on demand.
The Corporation declared bankruptcy and a receiver was appointed July 10, 1975. All the securities here in question were sold by the Board after default upon presentment to the receiver for repurchase on July 18, 1975. The Board concedes an excess of $9,004.90 in the proceeds of the sale over the amount which the Corporation was obligated to pay for repurchase of such securities if it had not defaulted on its agreement to repurchase. The Corporation claims a surplus of $62,905.61, based in part on a dispute as to interest computation the resolution of which is obviated by our conclusion on the merits.
The appellee Board correctly construes the judgment herein as recognizing the Corporation's obligation to purchase securities *863 of the kind presented to it by the Board on July 18 at a price fixed by the parties' prior transactions. Appellant contends, without reference to the record or authority on the point, that such obligation necessarily implies absolute liability of Corporation for a deficiency if the Board's sale proceeds had been less than the contract price. The further contention is that "it is only liable for the amount due under the repurchase agreement and if the securities are sold for an amount in excess of that obligation, Financial [Corporation] is entitled to the excess." Cf. § 679.502(2) and § 679.504(2), Florida Statutes, providing for deficiency or surplus entitlement in connection with sales "only if the security agreement so provides." Such contentions must be regarded as purely speculative on the record before us.
There is, in contrast, adequate testimony in this case based on custom and usage to support the conclusion of the trial court that upon default by Corporation the Board "had the right to utilize unconditionally the securities that it would have sold to Financial Corporation." That evidence is consistent with the practice described in a similar case involving sale by a purchaser: "Profits realized from these transactions were retained by the Bank and not delivered to the defaulting dealer." Union Planters National Bank of Memphis v. United States, 295 F. Supp. 1151, 1154 (W.D.Tenn. 1968); rev'd, 426 F.2d 115 (6th Cir.), on grounds that property law considerations did not control income taxes; cert. denied, 400 U.S. 827, 91 S.Ct. 53, 27 L.Ed.2d 56 (1970). The evidence, in addition, is that under the parties' agreement the Board had the right to sell the original securities at any time after acquiring them from Corporation without accountability for sale proceeds, subject only to its obligation to offer like securities for repurchase by Corporation under the terms specified by the agreement. The posture of the case presents no necessity for determining whether alternative measures of damages might have been claimed for breach by either party. Such ambiguities as might exist in the parties' agreement were correctly resolved against the Corporation's claim by the determination that its "failure to purchase ... terminated any obligation on the part of Defendant toward ... Corporation."
The court's further conclusion was that the evidence showed two transactions, an actual purchase and sale of securities with minor characteristics of a secured loan, and a simultaneous but separate agreement to repurchase and resell similar securities on specific terms. That conclusion is not negated by the use of loan terminology for internal purposes in the Board's records of such transactions, nor by the definition of a buy-back price by interest computations. The several decisions to which the parties refer are all fully consistent with our determination of contractual relations between the parties on the basis of evidence of a sale, even if that evidence might not be conclusive on the question of tax consequences of such transactions. American National Bank of Austin v. United States, 421 F.2d 442 (5th Cir.1970); cert. denied, 400 U.S. 819, 91 S.Ct. 36, 27 L.Ed.2d 46 (1970); Union Planters National Bank of Memphis v. United States, supra.
The judgment is accordingly affirmed.
ROBERT P. SMITH, Jr. and LARRY G. SMITH, JJ., concur.